# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs February 29, 2012

## STATE OF TENNESSEE v. RANDY KEITH WALLACE

### Appeal from the Criminal Court for Sullivan County
### No. S55,315    R. Jerry Beck, Judge

### No.  E2011-00606-CCA-R3-CD - Filed August 6, 2012

Appellant, Randy K. Wallace, was indicted by the Sullivan County Grand Jury for one count of rape and one count of sexual battery.  After a jury trial, Appellant was found guilty of two counts of sexual battery.  As a result, he was sentenced as a Range II, multiple offender to an effective sentence of eight years.  The trial court denied a motion for new trial, and this appeal followed.  On appeal, Appellant challenges the sufficiency of the evidence and his sentence.  Because we determine that the evidence was sufficient to support the convictions for sexual battery and that the trial court properly sentenced Appellant to an effective sentence of eight years, we affirm the judgments of the trial court.

 **Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Trial Court are Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which THOMAS T. WOODALL and ROGER A. PAGE, JJ., joined.

Katherine L. Tranum, Kingsport, Tennessee, for the appellant, Randy Keith Wallace.

Robert E. Cooper, Jr., Attorney General and Reporter; Meredith DeVault, Assistant Attorney General; Greeley Wells, District Attorney General; and Julie R. Canter, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## *Factual Background*

The victim, A.J.,[1] went to a party on the evening of May 9, 2008, with Brad Wright. At the time, she was eighteen years of age. Neither the victim nor Brad Wright[2] owned a vehicle so they got a ride to the house of Brad Wright's "Uncle Joey". Once they got to the house, the victim and Brad Wright got some marijuana. Brad Wright's uncle told them that they could not stay at his house. "Uncle Joey" took them to Appellant's apartment and dropped them off around 4:00 a.m.

When the victim and Brad Wright got to Appellant's apartment, Tracy Wright and his daughter were there, along with Appellant's girlfriend Rebecca Miller.[3] The victim had met Appellant a few times in the past. Everyone at Appellant's house smoked marijuana and drank alcohol for about an hour to an hour-and-a-half before people started to fall asleep. Brad Wright fell asleep on one of the couches. Tracy Wright and his daughter fell asleep on the other couch. The victim asked Appellant for a pillow and a blanket. She also asked him to leave the television on while she slept. Appellant brought the victim a blanket and a pillow.

The victim laid down on the floor, covered herself with the blanket, and fell asleep. She was fully clothed. Shortly after she fell asleep, the victim awoke. Appellant was behind her; her pants were pulled halfway down her thighs; Appellant was inserting his finger into her vagina. The victim told Appellant to "get off" of her. Appellant left the room. The victim cried and tried for what she thought was two hours to wake Brad Wright up so that she could leave the residence. The victim felt stuck because she did not have access to a car or phone. She eventually cried herself back to sleep.

The victim woke up around noon. There were quite a few other people at the residence when she awoke. Brad Wright was in the kitchen. The victim told Brad that Appellant would not leave her alone. Brad Wright laughed at her. Not long thereafter,

---

[1] It is the policy of this Court to refer to victims of sexual abuse by their initials.

[2] Due to the fact that several of the individuals involved herein have the last name Wright, to maintain clarity, we will refer to them using their first and last names. We mean no disrespect to those individuals involved herein.

[3] The victim thought that Rebecca Miller was Appellant's wife, but she was his girlfriend.

another uncle of Brad Wright's came to the residence. Brad Wright left with this uncle in a vehicle. The victim felt stranded and afraid.

The victim went into the living room and sat on the couch, watching television with Appellant and his girlfriend. The girlfriend left at around 4:00 p.m. to walk to the beer store. The victim stayed at the house with Appellant. The victim locked herself in the bathroom and took a shower. While the victim was in the shower, Appellant came into the bathroom and was touching and feeling "on her." The victim told Appellant to stop. Finally, she hit him on the head and told him to leave her alone. Appellant left the bathroom.

The victim got out of the shower and put a towel around her body. Appellant came back into the bathroom with a telephone. Appellant insisted that Brad Wright was on the phone. Rebecca Miller was back from the store at this point.

The victim talked to Brad Wright on Appellant's cell phone. Appellant was trying to lift her towel. The victim asked Brad Wright to come and get her from Appellant's residence. When she got off the phone, the victim got dressed and sat in the living room.

Around 7:00 p.m., Warren Wright showed up to pick up the victim. Appellant tried to grab the victim's face and kiss her before she left the residence. The victim left with Warren Wright on foot. As they walked down the road away from the residence, the victim told Warren Wright everything that happened with Appellant. Warren Wright took the victim back to the apartment, got Appellant's cell phone, and handed it to the victim so that she could call the police. The victim stated that she was unable to talk so Warren Wright called the police.

Officer Michael Darren McCoy, a detective with the Bristol Police Department, interviewed the victim on May 19, 2009. He also interviewed Appellant on May 30, 2009. Appellant waived his *Miranda* rights and gave a statement during which he admitted that he placed his finger in the victim's vagina while she was asleep. Appellant claimed that he stopped when she told him to stop. Additionally, Appellant acknowledged that he felt the victim's breast and vagina while she was in the bathroom taking a shower. Again, he stopped when the victim asked him to stop.

Appellant was indicted for one count of rape and one count of sexual battery by the Sullivan County Grand Jury. At trial, Appellant's brother testified that he was at the residence on the morning of May 10, 2009, and Appellant was acting normal. Further, Rebecca Miller testified that after she woke up, the victim was "just fine as far as [she] could tell."

Rebecca Miller recalled that she left the residence in the early afternoon to go buy beer from the Hillbilly Market. When she returned, the victim had a towel wrapped around her body.

Jobeth Alene Miller, Rebecca Miller's daughter, was at the residence around 11:00 a.m. on May 10, 2009. When she arrived, people were still sleeping on the floor. Ms. Miller recalled that the victim was dressed and very talkative.

At the conclusion of the proof, the jury found Appellant guilty of the lesser included offense of sexual battery in count one and guilty of sexual battery in count two.

The trial court held a separate sentencing hearing. The parties stipulated that Appellant was a Range II, multiple offender. The trial court considered Appellant's extensive prior criminal history, which included a conviction for attempted rape of a child, three convictions for sexual battery, and one conviction for aggravated sexual battery. Appellant was registered as a violent sex offender. The trial court did not apply any mitigating factors. The trial court chose to sentence Appellant to a sentence of four years for each conviction. Additionally, the trial court determined that based on Appellant's prior record and potential danger to the community as demonstrated by his prior conduct and convictions, the sentences should be run consecutively. The trial court described Appellant as a sexual predator.

After the denial of a motion for new trial, Appellant filed a timely notice of appeal.

*Analysis*

On appeal, Appellant argues that the evidence is insufficient to support the convictions. Specifically, he argues that the victim "voluntarily remained in the residence for thirteen (13) hours, despite the alleged attacks" and "never attempted to contact anyone for help or attempted to leave the residence to get away from someone whom she supposedly viewed as an aggressor."

When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. A verdict of guilty, rendered by a jury and "approved by the trial judge, accredits the testimony of the" State's witnesses and resolves all conflicts in the testimony in favor of the State. *State v. Cazes*, 875 S.W.2d 253, 259 (Tenn. 1994) (citing *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992)). Thus, although the accused is originally cloaked with a presumption of innocence, the jury verdict of guilty removes this presumption "and replaces it with one of guilt." *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with the

defendant to demonstrate the insufficiency of the convicting evidence. *Id.* The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. *See* Tenn. R. App. P. 13(e); *Harris*, 839 S.W.2d at 75. In making this decision, we are to accord the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." *See Tuggle*, 639 S.W.2d at 914. As such, this Court is precluded from re-weighing or reconsidering the evidence when evaluating the convicting proof. *State v. Morgan*, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." *Matthews*, 805 S.W.2d at 779. Further, questions concerning the credibility of the witnesses and the weight and value to be given to evidence, as well as all factual issues raised by such evidence, are resolved by the trier of fact and not the appellate courts. *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990). "The standard of review 'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

Appellant was convicted of sexual battery. Sexual battery is "unlawful sexual contact with a victim by the defendant or the defendant by a victim" accomplished with "[f]orce or coercion" or "without the consent of the victim and the defendant knows or has reason to know at the time of the contact that the victim did not consent." T.C.A. § 39-13-505(a)(1) & (2). "'Sexual contact' includes the intentional touching of the victim's . . . intimate parts, or the intentional touching of the clothing covering the immediate area of the victim's . . . intimate parts, if that intentional touching can be reasonably construed as being for the purpose of sexual arousal or gratification." *Id.* § 39-13-501(6).

In the case herein, the victim identified Appellant as the man who pulled down her pants as she slept and inserted his finger into her vagina without her consent. She also identified Appellant as the man who came into the bathroom while she was taking a shower and without her consent started "touching on her" breasts and vagina. The victim told Appellant to stop on both occasions and even hit him on the head and told him to "leave her alone" while she was in the bathroom. Further, Appellant admitted that he performed the above described acts in a statement to police. The fact that the victim did not leave the residence does not diminish or change the fact that the proof supports the conviction for sexual battery. Appellant is not entitled to relief.

*Sentencing*

Next, Appellant argues that the trial court inappropriately set his sentence above the minimum of the range in each count and erred in imposing consecutive sentences because

they were not "necessary to protect the public from further criminal conduct nor . . . reasonably related to the severity of the offense committed by the Appellant." The State insists that the sentences, both in length and manner of service, are proper.

"When reviewing sentencing issues . . . , the appellate court shall conduct a de novo review on the record of the issues. The review shall be conducted with a presumption that the determinations made by the court from which the appeal is taken are correct." T.C.A. § 40-35-401(d). "However, the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). We are to also recognize that the defendant bears "the burden of demonstrating that the sentence is improper." *Ashby*, 823 S.W.2d at 169.

In making its sentencing determination, a trial court, at the conclusion of the sentencing hearing, first determines the range of sentence and then determines the specific sentence and the appropriate combination of sentencing alternatives by considering: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the enhancement and mitigating factors; (6) any statistical information provided by the administrative office of the courts regarding sentences for similar offenses, (7) any statements the defendant wishes to make in the defendant's behalf about sentencing; and (8) the potential for rehabilitation or treatment. T.C.A. §§ 40-35-210(a), (b), -103(5); *State v. Williams*, 920 S.W.2d 247, 258 (Tenn. Crim. App. 1995). When imposing the sentence within the appropriate sentencing range for the defendant:

> [T]he court shall consider, but is not bound by, the following advisory sentencing guidelines:
> (1) The minimum sentence within the range of punishment is the sentence that should be imposed, because the general assembly set the minimum length of sentence for each felony class to reflect the relative seriousness of each criminal offense in the felony classifications; and
> (2) The sentence length within the range should be adjusted, as appropriate, by the presence or absence of mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114.

T.C.A. § 40-35-210(c) (2006).

At the outset we note that Appellant committed the criminal offenses at issue in May of 2009, therefore, the 2005 amendments to the Sentencing Act apply to our review of his sentencing. The 2005 amendments to the Sentencing Act made the application of the enhancement factors advisory in nature. *See* T.C.A. § 40-35-114; *State v. Jackie Lynn Gray*, No. M2007-02360-CCA-R3-CD, 2008 WL 2579175, at *5 (Tenn. Crim. App., at Nashville, June 28, 2008), *perm. app. denied*, (Tenn. Dec. 29, 2008); *State v. Troy Sollis*, No. W2007-00688-CCA-R3-CD, 2008 WL 1931688, at *3 (Tenn. Crim. App., at Jackson, May, 2, 2008). In fact, "[T]he 2005 amendments [to the sentencing act] deleted as grounds for appeal a claim that the trial court did not weigh properly the enhancement and mitigating factors." *State v. Carter*, 254 S.W.3d 335, 344 (Tenn. 2008).

After a review of the transcript from the sentencing hearing, it is clear that the trial court considered the nature and characteristics of the criminal conduct involved, Appellant's history and background, the mitigating and enhancement factors, and the principles of sentencing. *See id.* at 345-46. The trial court applied the following enhancement factors: (1) "[t]he defendant has a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range;" (7) "[t]he offense involved a victim and was committed to gratify the defendant's desire for pleasure or excitement;" and (8) "[t]he defendant, before trial or sentencing, failed to comply with the conditions of a sentence involving release into the community." T.C.A. § 40-35-114(1), (7), (8). Appellant had prior convictions for two violations of the sex offender registry, a conviction for the sale or distribution of marijuana, two convictions for sexual battery, a conviction for attempted aggravated sexual battery, and a conviction for attempted rape of a child. The record supports the existence of each applied enhancement factor and Appellant's sentence, in this case, the four years for each conviction for sexual battery.

*Consecutive Sentences*

Under Tennessee Code Annotated section 40-35-115(a), if a defendant is convicted of more than one offense, the trial court shall order the sentences to run either consecutively or concurrently. A trial court may impose consecutive sentencing upon a determination that one or more of the criteria set forth in Tennessee Code Annotated section 40-35-115(b) exists. This section permits the trial court to impose consecutive sentences if the court finds, among other criteria, that:

(1) The defendant is a professional criminal who has knowingly devoted the defendant's life to criminal acts as a major source of livelihood;

(2) The defendant is an offender whose record of criminal activity is extensive;

(3) The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;

(4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high; . . . .

T.C.A. § 40-35-115(b). When imposing a consecutive sentence, a trial court should also consider general sentencing principles, which include whether or not the length of a sentence is justly deserved in relation to the seriousness of the offense. *See State v. Imfeld*, 70 S.W.3d 698, 708 (Tenn. 2002). The imposition of consecutive sentencing is in the discretion of the trial court. *See State v. Adams*, 973 S.W.2d 224, 230-31 (Tenn. Crim. App. 1997).

As stated above, this section permits the trial court to impose consecutive sentences if the court finds, among other criteria, that "the defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high." T.C.A. § 40-35-115(b)(4). However, before ordering the defendant to serve consecutive sentences on the basis that he is a dangerous offender, the trial court must find that the resulting sentence is reasonably related to the severity of the crimes, necessary to protect the public against further criminal conduct, and in accord with the general sentencing principles. *See Imfeld* 70 S.W.3d at 708-09; *State v. Wilkerson*, 905 S.W.2d 933, 938-39 (Tenn. 1995).

With regard to consecutive sentencing, the trial court commented that Appellant's prior record and "potential danger to the community as demonstrated by his prior conduct and his prior convictions" led the trial court to conclude that Appellant "presents a clear and present danger to the public in general because . . . basically he's a sexual predator. In other words, the trial court ordered consecutive sentencing based on Appellant's extensive prior record. We note that the trial court did not make the proper findings under *Wilkerson* to support the imposition of a consecutive sentence based upon the determination that Appellant was a dangerous offender. However, the trial court also based the imposition of the consecutive sentence on Tennessee Code Annotated section 40-35-115(b)(2), that Appellant had an extensive record of criminal activity. In our review, the record shows that Appellant unquestionably has an extensive criminal record. His convictions include two violations of the sex offender registry, a conviction of the sale or distribution of marijuana, two convictions of sexual battery, a conviction for attempted aggravated sexual battery, and a

conviction for attempted rape of a child. We conclude that Appellant's criminal history alone is sufficient to support the imposition of consecutive sentences pursuant to Tennessee Code Annotated section 40-35-115(b)(2). Therefore, this issue is without merit. This is supported by the record. Appellant is not entitled to relief on this issue.

*Conclusion*

For the foregoing reasons, the judgments of the trial court are affirmed.

_____
JERRY L. SMITH, JUDGE